**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CRIMINAL ACTION** |
| **v.** | ) | **No. 07-20052-KHV** |
| | ) | |
| **CARL J. BAUMAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On April 26, 2007, a grand jury indicted defendant for knowingly making a false and

fictitious written statement in connection with attempted acquisition of a firearm in violation of

18 U.S.C. §§ 922(a)(6) and 924(a)(2), and unlawfully shipping, transporting, possessing and/or

receiving a firearm which had been shipped or transported in interstate or foreign commerce in

violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  See Doc. #1.  This matter is before the Court to

determine whether defendant is competent to stand trial under 18 U.S.C. § 4241.  On March 3, 2008,

the Court held a competency hearing.  After careful consideration of the evidence and statements

of counsel, for reasons set forth below, the Court finds that defendant is not competent to stand trial

at this time.

### Background

On May 31, 2007, the government filed a motion for psychiatric exam pursuant to 18 U.S.C.

§ 4241.  See Doc. #21.  In the motion, the government asserted that it had reasonable cause to

believe that defendant could be suffering from a mental disease or defect which rendered him

mentally incompetent such that he is unable to understand the nature and consequences of the

proceedings against him or to assist properly in his defense.  See id. at 3.[1]  On July 3, 2007, the

magistrate judge sustained the motion and committed defendant to custody of the Attorney General

for placement in a suitable facility to be examined for a reasonable period, not to exceed 45 days.

See Doc. #27.  The Attorney General thereafter placed defendant at the Federal Medical Center in

Rochester, Minnesota ("FMC Rochester") for psychiatric evaluation.

On August 28, 2007, a new attorney entered her appearance on behalf of defendant.

On October 26, 2007, Daniel Carlson, Psy.D., staff psychologist at FMC Rochester,

completed a forensic evaluation of defendant.  See Forensic Evaluation of October 26, 2007.  In the

evaluation, Dr. Carlson opined that defendant was competent to stand trial.  See id. at 6.

On November 26, 2007, the Court held a competency hearing.  At the hearing, the parties

jointly asked Dr. Carlson to review newly available mental health records from defendant's previous

incarceration in the State of Kansas.  The Court agreed and ordered Dr. Carlson to review the

additional records and prepare an addendum to his forensic report.  See Doc. #32 filed November

28, 2007.

On December 12, 2007, Dr. Carlson completed a forensic evaluation addendum.  See

Forensic Evaluation Addendum of December 12, 2007.  In the addendum, Dr. Carlson reported that

the additional mental health records did not alter his conclusion that defendant was competent to

stand trial.  See id. at 2-3.

On January 31, 2008, William S. Logan, M.D., psychiatrist with Logan & Peterson, PC in

Kansas City, Missouri, completed a psychiatric evaluation of defendant at the request of defendant's

attorney.  See Psychiatric Evaluation of January 31, 2008.  Dr. Logan concluded that defendant

---

[1]        Defense counsel refused to join in the request.  See id. at 2.

suffers from a delusional disorder which renders him unable to assist properly in his defense.  See id. at 20.

On March 3, 2008, the Court held a second competency hearing.  Counsel made statements and submitted evidence, and the Court took the matter under advisement.  After careful consideration of the evidence, the Court is now prepared to rule.

**Facts**

Based on evidence submitted by the parties, the Court finds the following facts:

State Criminal Case

In July of 1999, defendant allegedly fired bullets at his brother, who was driving by defendant's house.  See State v. Bauman, No. 80,030,  2003 WL 22990118, at *1 (Kan. Ct. App. Dec. 19, 2003).  The brother said that he looked back and saw defendant standing by his truck in the driveway.  See id.  The brother escaped injury, but found a bullet hole in his vehicle.  Defendant maintained his innocence, but a Kansas jury convicted him of one count of aggravated assault.[2]  See id.  The state court imposed a sentence of 12 months in prison.  See id.

On appeal, defendant argued, inter alia, that trial counsel was ineffective in not calling witnesses who could support his alibi theory of defense.[3]  See id. at *6.  The Kansas Court of Appeals remanded the matter to the trial court for hearing.  See id. at *1.  At the hearing, trial counsel testified that defendant had told him that he knew people who could verify his alibi, but he

---

[2]      The record does not reveal the date of conviction.

[3]      The record does not reveal underlying facts regarding defendant's alibi.  Prior to trial, defendant filed notice of intent to pursue an alibi defense.  At trial, one person testified in support thereof.  See id. at 5.  After trial, at a hearing on defendant's motion for new trial, three additional witnesses claimed that they could also verify defendant's alibi.  See id.

3

would not provide their names because they would "get into trouble." Id. at *6. Counsel stated that he repeatedly asked defendant for the names, but defendant refused to provide them. See id. On those facts, the Kansas Court of Appeals found that trial counsel was not ineffective. See id. Specifically, it held that if defendant had wanted his attorney to call alibi witnesses, he should have given him names well in advance of trial. The Court of Appeals concluded that trial counsel did the best he could, given defendant's unwillingness to cooperate in his own defense. See id. at **6-7.

### Kansas Prison Mental Health Records

While defendant was serving his 12-month sentence in state prison, the Kansas Department of Corrections evaluated his mental health. In May of 2004, the evaluator noted that defendant was cooperative, but appeared "a little off balance." Defendant's Exhibit C-401 at 5. The evaluator noted that defendant would often break into different stories about his case and was difficult to follow. See id. Defendant adamantly denied that he had committed the crime and claimed that his brother set him up. See id. at 5-8. The evaluator noted that defendant's version of events sounded truthful and would account for his level of anger, pain and frustration. See id. at 6. At that time, the evaluator found no evidence of mood, anxiety or thought disorder. See id.

In January of 2005, Kansas prison staff referred defendant to mental health services because he appeared to be suffering from increased delusions. See id., Staff Referral of January 24, 2005. In one incident, defendant believed that his wife was hiding in prison. See id. In another, defendant thought someone had performed a surgical operation on him. See id., Evaluation of January 27, 2005. Another time, defendant was found walking along a fence in a restricted area and was confused and did not know where he was. See id., Evaluation of February 4, 2005. Prison mental health staff diagnosed defendant with Psychotic Disorder Not Otherwise Specified and Schizotypal

Personality Disorder.  See Forensic Evaluation Addendum of December 12, 2007 at 2.

    Dr. Carlson's Evaluation

    On October 26, 2007, Dr. Carlson prepared a forensic evaluation based on (1) interviews of

defendant; (2) prison staff observations of defendant; (3) psychological and intelligence test results;

and (4) documents relating to this case and defendant's state criminal case.[4]  See Forensic Evaluation

of October 26, 2007 at 1.  Dr. Carlson noted that while defendant functioned well and did not display

symptoms of a severe mental illness, he made odd statements and his train of thought and speech

was often difficult to follow.  See id. at 4.  Dr. Carlson observed that defendant was a "suspicious"

individual and that he made statements about not trusting the government and legal system and was

often guarded when answering questions about his case.  Id. at 3.  Dr. Carlson found that although

defendant did not meet diagnostic criteria for any particular mental disorder, he exhibited

characteristics of Schizotypal Personality Disorder.  See id. at 4.  Dr. Carlson explained the disorder

as follows:

> Personality disorders involve patterns of inner experience and behavior that deviate
> markedly from the expectations of the culture.  These patterns are pervasive across
> a broad range of situations, lead to impairment in social and occupational
> functioning, and tend to be of long duration.  Schizotypal Personality Disorder
> involves a pattern of social and interpersonal deficits marked by reduced capacity for
> close relationships, perceptual distortions and eccentricities of behavior.  While
> [defendant] does not meet the full diagnosis criteria for Schizotypal Personality
> Disorder, he does display some of the characteristics, including odd thinking and
> speech, suspiciousness, and social/interpersonal difficulties.

Id. at 4.

    Regarding competency to stand trial, Dr. Carlson reported that defendant was aware of the

charges against him and adequately understood how the legal process works.  See id. at 6.

---

    [4]    Dr. Carlson also reviewed defendant's mental health records from 1978.

Regarding ability to work with his attorney, Dr. Carlson stated as follows:

> [Defendant] said he has an attorney and was able to state his original attorney's
> name.  Apparently the defendant's first attorney suffered an injury and was replaced
> by another individual. [Defendant] said he has not yet met with the second defense
> attorney. [Defendant] said he is not sure if he has confidence in his attorney, and
> said, "I don't trust the legal systems."  When asked how he can help his lawyer, he
> said he had already provided legal documentation relevant to his case. [Defendant]
> denied having any disagreements with his attorney regarding the way his case is
> being handled, although he stated, "I'd like to know why they sent me here."
> [Defendant] exhibited an understanding of the meaning and implications of
> attorney/client confidentiality.  He said he expects no problems discussing his case
> with his lawyer.  [Defendant] was adequately cooperative with staff at FMC
> Rochester, suggesting he has the ability to cooperate with counsel. . . . [Defendant]
> denied ever having difficulty behaving appropriately in a courtroom, and he
> expressed the opinion he is fully competent to participate in legal proceedings.
>
> [Defendant] displayed an adequate knowledge of the criminal justice system and the
> legal issues relevant to his case. His attention, concentration, and comprehension are
> adequate.  While he seems to have odd ideas on various subjects and thinks in a
> rather suspicious fashion about the legal system, there is no evidence he suffers from
> a mental disorder that compromises his contact with reality.

Id. at 5-6.  Dr. Carlson concluded that defendant does not suffer from a mental disease or defect

which renders him unable to understand the nature and consequences of the proceedings against him

or to assist properly in his defense.  See id. at 6.

Subsequently, at the Court's request, Dr. Carlson reviewed records regarding plaintiff's

psychiatric history during his incarceration in Kansas state prison.  In his addendum report,

Dr. Carlson stated that defendant's behavior for a brief period of time at the state prison was

consistent with psychosis.  See Forensic Evaluation Addendum of December 12, 2007 at 2.

Dr. Carlson noted, however, that defendant did not display any blatantly psychotic or delusional

symptoms when he was at FMC Rochester.  See id. at 2.  Dr. Carlson concluded that the state prison

records are helpful to understanding defendant's psychiatric history, but they do not change his

opinion that defendant is competent to participate in legal proceedings.  See id. at 2-3.  Dr. Carlson

cautioned, however, that if before going to trial defendant's mental condition deteriorates, i.e. he begins to voice ideas which are delusional or bizarre, defendant should be re-evaluated regarding his competence to proceed.  See id. at 3.

Dr. Logan's Evaluation

On January 31, 2008, Dr. Logan prepared a psychiatric evaluation of defendant based on (1) a 90-minute examination of defendant in prison; (2) a 60-minute telephone conference with defendant's ex-wife, Lisa Bauman;[5] and (3) a review of documents including defendant's prison mental health records, Dr. Carlson's evaluations and documents relating to this case and defendant's state criminal case.  See Psychiatric Evaluation of January 31, 2008.  Based on this information, Dr. Logan found that defendant firmly believes that a conspiracy exists to put him in prison.  See id. at 8.  Specifically, Dr. Logan reported that defendant has a "persecutory delusion" involving his family and various members of the legal system.  Dr. Logan elaborated as follows:

> [Defendant] trusts no one.  His paranoia causes him to distort information, and he believes documents in his case have been changed.  His paranoid thinking prohibits him from rationally considering his attorneys advice, or cooperating with his attorney to produce information relevant to his defense.

Id. at 8.

Dr. Logan found that defendant believes that (1) a lawyer in his state criminal case purposefully lost records and that all lawyers do this to "cover their ass"; (2) his attorney in this case

_____

[5]     From 1980 to 2007, Lisa Bauman was married to defendant.  See Psychiatric Evaluation of January 31, 2008 at 13-16.  She told Dr. Logan that defendant's behavior changed markedly in 2006.  At that time, defendant became paranoid and did not trust anyone.  See id. at 14-16.  He believed that his brothers were watching him and that his wife was trying to kill him while he was sleeping and by poisoning his food.  See id. at 16.  In September of 2006, defendant made violent threats toward his wife and she left him.  See id. at 17.  Defendant continued to make threatening remarks and in January of 2007, Lisa Bauman obtained a restraining order against him.  See id. at 12, 17.

or someone else has altered a document; and (3) the decision of his state appeal has been altered.

See id. at 4, 8.  Regarding his attorney in this case, Dr. Logan reported as follows:

> [Defendant] is suspicious of his attorney, and noted she did not tell him ahead of time about this evaluation.  He believes he was set up to go to prison by others beginning years ago. . . . [Defendant] stated, "I don't trust anyone."  He stated there were documents that would help him with his current federal charges.  He will not tell his attorneys or investigators where to find them, and will only produce them if he can go get them himself, as he fears the documents would be changed if he allows them to be in anyone else's possession.  These papers allegedly show his conviction was reversed on appeal.

Id. at 7.

Dr. Logan diagnosed defendant with Delusional Disorder – a disorder in which a person is preoccupied with non-bizarre delusions, i.e. things which could potentially occur in real life such as being plotted against, followed, poisoned, infected or having a disease.  See id. at 17.  Dr. Logan noted that defendant suffered from significant paranoia in 1999 and 2000, which directly affected his ability to work with his defense attorney in the state criminal case.  See id. at 18.  Dr. Logan found that in the state case, defendant waited until the day of trial to provide his attorney names of exculpatory witnesses, and the court excluded their testimony due to lack of discovery.  See id.

Regarding defendant's competency to stand trial, Dr. Logan opined as follows:

> [Defendant's] paranoia has progressed to the point of delusion and directly impacts his ability to work with his attorney or defend himself against his current federal charges.  In his own words, [defendant] trusts no one.  He believes there is a conspiracy to imprison him involving his brothers, lawyers and judges.  He believes documents, such as a State Appellate decision, and tapes of court hearing have been altered in both his former state [case] and in his current federal case as well.  He did not believe the Restraining Order had been signed by his wife.  Specifically, he does not trust [current defense counsel] or her staff.  He will not produce what he asserts are relevant documents unless they are continuously in his possession.  While his persecutory ideas do not alter his knowledge of the charges or the concrete roles of court officers, his persecutory ideas do alter his perception of the actions and motivations of the court officers who he views as part of a larger conspiracy, including his defense counsel.  [Defendant], due to his persecutory ideas would

8

distort the meaning of court proceedings, be unable to testify relevantly or to make voluntary, knowledgeable informed decisions based on his attorney's advice.  His persecutory ideas also would influence his choices and the manner in which defense testimony is presented and in his selection of a plea.

Id. at 19.  Dr. Logan concluded that defendant's delusional disorder renders him mentally incompetent to the extent that he is unable to assist properly in his defense.  See id. at 20.

### Analysis

Although the parties' positions are not entirely clear, it appears that defense counsel and government counsel believe that defendant is not competent to stand trial, but defendant himself believes that he is competent.  The government initially asked for a mental evaluation and defense counsel refused to join in the request.  See Doc. #21 filed May 31, 2007 at 2.[6]  The Court ordered an exam which resulted in Dr. Carlson finding that defendant is competent to stand trial.  Defendant's new attorney requested a second opinion from Dr. Logan, who found defendant incompetent.  At the second competency hearing, government counsel stated that although she appreciated Dr. Carlson's report, she thought that it missed the boat and that Dr. Logan's findings made more sense in this case.  Defense counsel agreed, stating that matters exist which defendant believes would absolutely aid in his defense, but he will not reveal them to her because he does not trust her.  The Court has not heard directly from defendant, but it appears that he believes that he is competent to proceed to trial.  See Forensic Evaluation of October 26, 2007 at 2, 6 (defendant denied having mental health problems and expressed opinion that he is fully competent to participate in legal proceedings).

---

[6]       A different attorney now represents defendant.  At the second competency hearing, government counsel represented that original defense counsel did not join the request because defendant had never had his mental health addressed in a court proceeding and did not want to be evaluated.

If defendant is incompetent, due process considerations require the Court to suspend his criminal trial until such time, if any, that he regains capacity to participate in his defense and understand the proceedings against him.  See Medina v. California, 505 U.S. 437, 448-49 (1992) (citing Dusky v. United States, 362 U.S. 402 (1960)).  The procedure for determining competency of criminal defendants in federal court is set forth in 18 U.S.C. § 4241.  Under Section 4241(d), the Court must commit defendant to custody of the Attorney General if it finds by a preponderance of evidence that defendant is "presently suffering from a mental disease or defect" which renders him "mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(c).[7]  The determination of defendant's competency is a matter of fact which can be set aside only if clearly erroneous.  See United States v. Boigegrain, 155 F.3d 1181, 1189 (10th Cir. 1998).   The fact that defendant might have some degree of mental disorder does not necessarily mean that he is incompetent to aid and assist in his own defense.  See Miles v. Dorsey, 61 F.3d 1459, 1472 (10th Cir. 1995).

The United States Supreme Court has articulated the following test for determining a defendant's competency:

> [I]t is not enough for the district judge to find that the defendant is oriented to time and place and has some recollection of events, but that the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him.

---

[7]       Section 4241 does not address which party bears the burden of proof, and the law appears unsettled in this regard.  See, e.g., Medina, 505 U.S. at 447; United States v. Wayt, 24 Fed. App'x 880, 883, No. 00-8044 (10th Cir. Nov. 27, 2001).  The Court need not address the issue in this case, however, because it would reach the same result regardless which party bears the burden of proof.

Dusky, 362 U.S. at 402 (quotations and parentheses omitted).  Under this test, the Court must determine whether defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.  That defendant may have a factual understanding of the legal system and the charges against him is not enough.  See Lafferty v. Cook, 949 F.2d 1546, 1554 (10th Cir. 1992).  He must have sufficient contact with reality such that he can rationally understand the proceedings against him.  See id. at 1551.  Defendant lacks rational understanding if his mental condition precludes him from perceiving accurately, interpreting or responding appropriately to the world around him.  See id.

Here, the record contains conflicting evidence regarding defendant's competency. Dr. Carlson found defendant competent, while Dr. Logan found him incompetent.  After careful consideration of the evidence, the Court is persuaded by Dr. Logan's report.  To be competent, defendant must have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.  See Dusky, 362 U.S. at 402.  Dr. Logan focused specifically on defendant's ability in this regard.  He concluded that defendant suffers from a delusional disorder which prevents him from rationally considering his attorney's advice or cooperating with his attorney to produce information which is relevant to his defense.  See Psychiatric Evaluation of January 31, 2008 at 19-20.  Dr. Carlson, on the other hand, focused primarily on defendant's knowledge and understanding of the legal system.  See Forensic Evaluation of October 26, 2007 at 5.  Dr. Carlson noted that defendant is a suspicious individual and that he does not trust the government and legal system, but he did not specifically evaluate how those characteristics might affect defendant's ability to trust and cooperate with his attorney in this case.  See id. at 3, 6.

On this record, the Court finds by a preponderance of the evidence that defendant suffers

from a mental disease or defect which renders him unable to assist properly in his defense. Specifically, the Court finds that due to a delusional disorder, defendant lacks sufficient contact with reality to the extent that he cannot rationally consult with or cooperate with his attorney in this case. See Lafferty, 949 F.2d at 1551. This conclusion is based primarily on Dr. Logan's report, but is bolstered by defense counsel's statement that because of mistrust, defendant refuses to provide what he believes are exculpatory materials in this case.  See Medina, 505 U.S. at 450 (defendant's inability to assist counsel is itself probative evidence and defense counsel will often have best-informed view of defendant's ability to participate in defense).

Because the Court finds defendant incompetent, it must commit him to custody of the Attorney General to hospitalize him for treatment in a suitable facility –

> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
> (2) for an additional reasonable period of time until--
>> (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
>> (B) the pending charges against him are disposed of according to law;
> whichever is earlier.

18 U.S.C. § 4241(d).[8]

**IT IS THEREFORE ORDERED** that pursuant to 18 U.S.C. § 4241(d), the Court finds by a preponderance of the evidence that defendant is presently suffering from a mental disease or defect

---

[8]     Section 4241(d) provides that if, at the end of the time period specified, the Court determines that defendant's mental condition has not so improved as to permit proceedings to go forward, he will be subject to the provisions of Section 4246 (regarding hospitalization of persons due for release but suffering from mental disease or defect of which release would create substantial risk of bodily injury to another or serious damage to property of another) and Section 4248 (regarding civil commitment of sexually dangerous persons).  See 18 U.S.C. § 4241(d).

which renders him incompetent to assist properly in his defense.

**IT IS FURTHER ORDERED** that pursuant to 18 U.S.C. § 4241(d), the Court commits defendant to custody of the Attorney General to hospitalize him for treatment in a suitable facility for a reasonable period of time, not to exceed four months, as is necessary to determine whether there is substantial probability that in the foreseeable future he will attain capacity to permit the proceedings to go forward.

**IT IS FURTHER ORDERED** that on or before **October 24, 2008,** the Attorney General shall report to the Court whether substantial probability exists that in the foreseeable future, defendant will attain capacity to permit the proceedings to go forward.

Dated this 26th day of June, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge